***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BART ROSSI** | : |
| Plaintiff, | : |
| v. | : Civ. Action No.: 13-6884 (FLW)(DEA) |
| | : **OPINION** |
| **VERICARE MANAGEMENT, INC.** | : |
| Defendant. | : |

**WOLFSON**, **United States District Judge:**

      Presently before the Court is defendant Vericare Management, Incorporated's ("Defendant" or "Vericare") motion for partial dismissal of plaintiff Bart Rossi's ("Plaintiff") Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). In his Complaint, Plaintiff asserted various claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., and analogous state law causes of action, alleging that Defendant, his former employer, was submitting fraudulent claims to Medicare and Medicaid. However, the parties have settled all federal and state FCA claims. Now, the only remaining claims are employment-related state law claims stemming from Plaintiff complaining to Vericare about its alleged fraudulent activities, as well as discrimination based on Plaintiff's age. Specifically, Plaintiff asserts claims under the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19, et seq., and the New Jersey Law Against Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-1, et seq., for age discrimination and hostile work environment. In the instant motion, Defendant only seeks to

1

dismiss Plaintiff's claims under the LAD.  For the reasons set forth below, Defendant's motion is **GRANTED**.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 1978, Plaintiff founded Rossi Psychological Group, which "was a behavioral health science organization with licensed mental health/behavioral health professionals delivering developed assessments and counseling to elderly residents at almost 150 nursing facilities throughout New Jersey."  Compl. at ¶¶ 8-9.  After owning and operating that company for approximately thirty-one years, Plaintiff sold Rossi Psychological Group to Vericare in 2009.  Id. at ¶ 10.  According to Plaintiff, "Vericare directly employs licensed behavioral healthcare professionals, including psychiatrists, psychologists, licensed clinical social workers, physicians, nurses and other medical professionals who provide behavioral health services and psychotherapy to elderly patients in nursing facilities and long-term care settings."  Id. at ¶ 7.  Plaintiff continued to work at Vericare until he was terminated in June 2013.  See id. at ¶ 54.

Beginning in 2012, Plaintiff alleges that "there was a change in upper management at Vericare," which resulted in the adoption of new practices that "led to extremely excessive billing for evaluations, a significant amount of unnecessary psychological evaluations and hundreds of needless psychotherapy follow-up sessions."  Id. at ¶¶ 12, 39.  Plaintiff further alleges that "[t]hese practices were implemented solely to increase Vericare's profits.  The practices were a violation of Medicare and Medicaid's provisions and Vericare improperly received funds allocated for the Medicare and Medicaid program."  Id. at ¶ 39.  Because of his concerns, Plaintiff allegedly raised the following objections to various members of upper management at Vericare:

> Specifically, Vericare management disregarded the competency evaluations of patients and pushed Dr. Rossi to conduct follow-up sessions on patients determined to be "not competent," therefore, rendering the session not medically necessary.  Dr. Rossi objected to this practice as well as the demand that every patient in a

2

> rehabilitation facility receive two to five therapy sessions per week regardless of necessity as is the practice by Vericare in other states. Dr. Rossi also objected to the need for every patient in a rehabilitation setting to be evaluated by a psychologist, too many sessions with patients who had cognitive problems, caseload calculators pushing three or more sessions per month per patient, overuse of psychological testing, the "Vericare Standing Order Form" and push for standing orders so that each new patient in a nursing home serviced by Vericare is seen by a Vericare psychologist, cash bonuses given to Vericare Regional Managers for procuring standing orders with nursing facilities, and cash bonuses to psychologists, licensed social workers and nurses for services that were above a set high number.

Id. at ¶ 38. In response to his objections, Plaintiff alleges that Defendants "minimized [his] efforts and involvement within Vericare, ignored [his] suggestions for business development and instead put pressure on [him] to conduct fraudulent business." Id. at ¶¶ 40, 114. In addition, Plaintiff alleges that Defendant "accused Dr. Rossi's region of being unsuccessful despite proof that it held the top position in New Jersey and faced growing competition." Id. at ¶¶ 41, 115. Indeed, under the new management, Plaintiff alleges that he did not receive a bonus for his performance in either 2011 or 2012. Id. at ¶¶ 44-45, 118-119. According to Plaintiff, however, one of his subordinates received "a sizable bonus for 2012 to which Dr. Rossi helped him achieve yet Vericare awarded no bonus to Dr. Rossi for his efforts in 2012." Id. at ¶¶ 45, 118. When that subordinate was terminated, Defendant assigned Plaintiff two additional territories, which "led to an immense increase in workload yet Dr. Rossi received no salary increase." Id. at ¶¶ 46, 119.

In May 2012, Donald Myll ("Myll"), Chief Executive Officer of Defendant, sent Plaintiff an email, stating: "I wanted to get back to you regarding your option request.... The performance of your NJ and MA regions did not set you apart of overall company results to lead the [Board of Directors] to an exception for you." Id. at ¶¶ 42, 116. In December of that same year, Myll sent Plaintiff another email, stating:

> Your region is performing significantly behind our mutually prepared plan and last year. Let's put it into perspective. Less than last year in a growing market! Now we can talk about the reasons behind this disappointment but in the end what we

> are doing in New Jersey has not worked this year.  Blaming it on competition as if it is solely an external factor that we have no control over is not acceptable.  Changes in new ideas, new disciplines teamwork, etc. are needed.  From what I can tell, we have not adjusted our strategy in New Jersey for our base business.

Id. at ¶¶ 43, 117.  In February 2013, Plaintiff alleges that he complained to Dr. Thomas Cooper, Chairman of the Board of Directors at Defendant, with respect to Defendant's purported fraudulent practices and the hostile work environment caused by Myll and other members of upper management.  Id. at ¶¶ 47, 120.  Prior to that meeting, however, Myll allegedly called Plaintiff to reprimand him for complaining to Dr. Cooper, and "Myll pressed Dr. Rossi to tell him what Dr. Rossi was going to tell Dr. Cooper prior to Dr. Rossi's meeting with Dr. Cooper."  Id. at ¶¶ 48, 121.  At the meeting, Plaintiff alleges that he informed Dr. Cooper that "Vericare's method for growing business was a concern for Dr. Rossi as he believed it involved violations of Medicare and Medicaid's Rules and Regulations, which he brought to Dr. Cooper's attention."  Id. at ¶ 49.  After Plaintiff complained to Dr. Cooper, Plaintiff avers that Defendant removed two territories from him "and put them under the supervision of a younger person."  Id. at ¶¶ 50, 108, 122.  Furthermore, Plaintiff alleges that he was also excluded from meetings and communications regarding a facility called Buttonwood, "which he was instrumental in bringing to Vericare."  Id.

In response to his complaints, Plaintiff alleges that Vericare hired a consultant to conduct an investigation, but Plaintiff alleges that "[t]he consultant conducted a sham investigation into Dr. Rossi's complaints," and that "[t]he investigation was never concluded and no findings were issued."  Id. at ¶¶ 51, 123.  On or around May 22, 2013, Plaintiff's counsel sent correspondence to Defendant's counsel providing a copy of Plaintiff's complaint to Dr. Cooper and informing Defendant's counsel of the retaliation that has followed.  Id. at ¶¶ 52, 124.  On or around May 31, 2013, Defendant turned off Dr. Rossi's cellphone.  Id. at ¶¶ 53, 125.  Shortly thereafter, in June of 2013, Defendant terminated Plaintiff.  Id. at ¶¶ 54, 126.

On November 14, 2013, Plaintiff filed his *qui tam* Complaint on behalf of the United States and Florida, North Carolina and Texas, asserting claims under the federal False Claims Act ("FCA") and analogous state laws, as well as employment-based claims under CEPA and LAD. On November 4, 2015, the United States declined to intervene, however, the United States assisted the parties in reaching a settlement. On December 2, 2015, the parties submitted a joint stipulation of settlement. Shortly thereafter, this Court then signed an Order dismissing Plaintiff's FCA claims in Counts One, Two, Three, Seven, Eight and Nine. See Order dated December 7, 2015. The following claims remain: violations of CEPA in Count Four; violations of LAD for age discrimination in Count Five; and violations of LAD for hostile work environment in Count Six. In the instant motion, Defendant only moves to dismiss Plaintiff's LAD claims in Counts Five and Six.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's

5

entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotation marks and citation omitted); Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (internal quotation marks and citation omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations marks and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. (internal quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks and brackets omitted).

### III. DISCUSSION

**(i) CEPA Waiver Provision**

Defendant argues that Plaintiff's LAD claims for age discrimination and hostile work environment should be dismissed because Plaintiff has effectively waived his LAD claims, pursuant to the CEPA waiver provision, N.J. Stat. Ann. § 34:19-8, as those claims are factually identical to his CEPA claim. To that end, Defendant further contends that, under the plain language of the statute, the applicability of the CEPA waiver provision is determined at the "institution of an action," and that courts in this jurisdiction have regularly determined the waiver provision at the motion to dismiss stage. In response, Plaintiff contends that he does not have to elect to waive his LAD claims until after the completion of discovery.

CEPA "is considered remedial legislation entitled to liberal construction, its public policy purpose to protect whistleblowers from retaliation by employers have been long recognized by the courts of this State." Lippman v. Ethicon, Inc., 222 N.J. 362, 378 (2015); see Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994). Relevant here, that statute contains a waiver provision, which states in pertinent part: "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law." N.J. Stat. Ann. § 34:19-8. Simply put, that waiver provision requires a plaintiff to elect between his or her CEPA claim and other claims based on the same retaliatory conduct which is actionable under CEPA. Broad v. Home Depot U.S.A., Inc., 16 F. Supp. 3d 413, 416 (D.N.J. 2014). However, the waiver provision does not require a plaintiff to elect between a CEPA claim and those claims that are substantially independent of the CEPA claim. Id.

The New Jersey Supreme Court has not determined when a plaintiff must make an election under CEPA's waiver provision, and courts in this district are split on the question. See Walsh v. Bril-Jil Enter., Inc., No. 15-0872, 2016 WL 6246764, at *13 (D.N.J. Oct. 24, 2016) (stating that

there is not "a consensus among courts within this district as to the point in the proceedings at which a plaintiff must elect between pursuing his CEPA or unlawful termination claim."). Some courts in this district have held that "the CEPA waiver does not attach until after the completion of discovery." Broad, 16 F. Supp. 3d at 417; see Chadwick v. St. James Smokehouse, Inc., No. 14-2708, 2015 U.S. Dist. LEXIS 38340, at *27-28 (D.N.J. Mar. 26, 2015) ("A decision about CEPA waiver ought to be reached after discovery."); Rubin v. Sultan Healthcare, Inc., No. 08-6175, 2009 U.S. Dist. LEXIS 41534, at *12 (D.N.J. May 15, 2009) (concluding that "the CEPA waiver provision would not require a plaintiff to elect her remedy at the pleading stage of the litigation but rather defer the waiver until the plaintiff has had an opportunity to conduct discovery."). However, other courts in this district have held that, based on the provision's use of the phrase "institution of the action," a plaintiff "waive[s] all other CEPA-related claims upon his filing of a claim under CEPA." Hornung v. Weyerhaeuser Co., Inc., No. 06-2300, 2007 WL 2769646, at *6 (D.N.J. Sept. 21, 2007); see Hilburn v. Bayonne Parking Auth., No. 07-5211, 2009 WL 777147, at *3 (D.N.J. Mar. 20, 2009) (concluding that, "because the clear and unambiguous language of CEPA supports the interpretation that an action is 'instituted' upon filing, and because New Jersey courts have provided no authority to the contrary, the Court finds that Plaintiffs waived their CEPA-related claims upon filing their CEPA claim.").

In the absence of a controlling decision from the State's highest court on an issue, this Court has to predict what the New Jersey Supreme Court would decide. See Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc., 653 F.3d 225, 231 (3d Cir. 2011). In this case, I predict that the New Jersey Supreme Court would hold that the CEPA waiver provision does not require a plaintiff to elect his remedies until after the completion of discovery. In reaching this conclusion, I find helpful the Supreme Court's decision in Young v. Schering Corp., 141 N.J. 16, 32 (1995).

8

In that case, the Court addressed the timing of the CEPA waiver provision, in *dicta*, opining that the language of "institution of an action" contained in that provision, "may be susceptible of meaning something other than the filing of a complaint," and that such language "could conceivably contemplate an election of remedies with restrictions in which the election is not considered to have been made until discovery is complete or the time of a pretrial conference." Young, 141 N.J. at 32.  In doing so, the Court expressly declined to decide this question, as well as other questions regarding the "extent of [the waiver provision's] application and its interaction with other sources of law."  Id.  Years later, guided by Young, the Appellate Division found that "[o]nly after gaining access to all of the facts, will a plaintiff be in a position to make a knowing and meaningful election," and thus, before making an election under the CEPA waiver provision, "a plaintiff should have an opportunity to complete discovery."  Maw v. Advanced Clinical Comms., 359 N.J. Super. 420, 441 (App. Div. 2003), rev'd on other grounds, 179 N.J. 439 (2004).

Indeed, other courts in this district have relied on Young and Maw to predict that the New Jersey Supreme Court would hold that a plaintiff should have an opportunity to complete discovery before making an election of remedies under the CEPA waiver provision.  See Broad, 16 F. Supp. 3d at 418 ("Based on Young and Maw, however, this Court predicts that New Jersey's Supreme Court would hold that the CEPA waiver provision does not require a plaintiff to make this [election] choice at the pleading stage."); Chadwick, No. 14-2708, 2015 U.S. Dist. LEXIS 38340, at *27-28 ("Based on Young and Maw, the Court finds that the New Jersey Supreme Court would hold that CEPA waiver does not bar a plaintiff from filing a Complaint alleging both CEPA and common law wrongful discharge causes of action.").  I, too, join Broad and Chadwick and find that Plaintiff should have the opportunity to conduct discovery regarding his claims before he is required to make an election of remedies between his CEPA and LAD claims under the waiver

9

provision. In so holding, I am persuaded by state and federal courts alike that have expanded the interpretation of the language "institution of the action" under CEPA. To be clear, however, if Plaintiff has not elected his remedies after the close of discovery, Defendant is entitled to raise anew its waiver argument at that time. I, now, turn to the merits of Plaintiff's LAD claims.

### (ii) LAD – Age Discrimination

Defendant argues that Plaintiff cannot state a claim for age discrimination under LAD because: (i) Plaintiff has failed to allege sufficient allegations to suggest his membership in a protected class; (ii) Plaintiff does not sufficiently allege that he suffered an adverse employment action; and (iii) Plaintiff fails to sufficiently allege that he was replaced with someone sufficiently younger to permit an inference of discrimination. I agree.

"The purpose of the LAD is to eradicate discrimination whether intentional or unintentional." Lehmann v. Toys R Us, Inc., 132 N.J. 587, 604 (1993). Under LAD, it is unlawful for an employer to discriminate against an individual with respect to the terms and conditions of his or her employment on the basis of a protected characteristic, which includes race, religion, age, sex and disability. N.J. Stat. Ann. § 10:5-12(a). To state a claim for age discrimination, a plaintiff must allege that: (1) he was a member of the protected class; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination. See Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005); see also Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004). While LAD does not establish an age limitation on who is able to assert an age discrimination claim, it is imperative that a plaintiff at least allege his or her actual age in the complaint. See Swider v. Ha-Lo Indus., 134 F. Supp. 2d 607, 622 (D.N.J. 2001). In that connection, in order to determine whether a person is "sufficiently

10

younger" to permit an inference of age discrimination, a plaintiff must also plead the actual age, or at least an approximation of the actual age, of the person that replaced the plaintiff. See Monaco, 359 F.3d at 307 ("We subsequently have explained that in order to satisfy the sufficiently younger standard, "there is no particular age difference that must be shown, but while different courts have held… that a five year difference can be sufficient,… a one year difference cannot.").

The Third Circuit has stated that "an adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3rd Cir. 2001) (internal quotation marks and citation omitted); see Ivan v. Cnty. of Middlesex, 595 F. Supp. 2d 425, 470 (D.N.J. 2009) ("Under the LAD, an adverse employment action is one sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner."). In addition, an adverse employment action is also one that can "limit, segregate or classify the plaintiff in a way which would tend to deprive [him or] her of employment opportunities or otherwise affect [his or] her status as an employee." Marrero v. Camden Cnty. Bd. of Soc. Servs., 164 F. Supp. 2d 455, 463 (D.N.J. 2001) (internal quotation marks and citation omitted). While an adverse employment action obviously includes termination, suspension or demotion, it can also include such actions as transfer or reassignment that are materially adverse.[1] See Ivan, 595 F. Supp. 2d at

---

[1] In addition, "courts have looked to CEPA for guidance on what constitutes an 'adverse employment action.'" Ivan, 595 F. Supp. 2d at 471. Under CEPA, an adverse employment action or "retaliatory action" is similarly defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J. Stat. Ann. § 34:19-2(e). "When a plaintiff does not allege a discharge or demotion, conduct must be serious and tangible enough to materially alter the employee's terms and conditions of employment or adversely affect her status as an employee." Ivan, 595 F. Supp. 2d at 471 (internal quotation marks and citation omitted). Indeed, a "[p]laintiff need not show that the adverse employment action resulted in financial hardship." Id.

471. However, "harassment alone is not enough." Id; Victor v. State, 401 N.J. Super. 596, 616 (App. Div. 2008) (stating that "an employer's adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction," such as "temporary reassignment… or a supervisor's decision to no longer socialize with an employee."); Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995).

With respect to the first prong, Plaintiff has failed to allege sufficient facts to show that he is a member of a protected class because he does not allege his actual age, which is crucial information in an age discrimination claim. See Swider, 134 F. Supp. 2d at 622. Furthermore, the fourth prong fails for the same reason. Plaintiff merely alleges that he was replaced by a "younger person," but that allegation is wholly insufficient to determine the age difference between Plaintiff and his replacement. See Monaco, 359 F.3d at 307; see also Hassell v. Johnson & Johnson, No. 13-4109, 2014 U.S. Dist. LEXIS 60503, at *15 (D.N.J. May 1, 2014) (dismissing the plaintiff's claim for age discrimination under LAD, reasoning that, "[b]y merely stating that the positions went to 'primarily younger' employees, Plaintiff is asking the Court to take a conclusory statement and draw an inference that Defendant's hiring decision was discriminatory."). Nevertheless, while Plaintiff has failed to allege these basic requirements of an age discrimination claim under LAD, these deficiencies are readily curable, and as such, I shall address whether Plaintiff has sufficiently alleged an adverse employment action.[2]

---

[2] However, Defendant does not contend that Plaintiff failed to perform his job at a level that met Vericare's legitimate expectations, and as such, the second prong is not in dispute. See Zive, 182 N.J. at 450.

In regard to the third prong,[3] as an adverse employment action, Plaintiff alleges that Defendant removed two territories from Plaintiff "and put them under the supervision of a younger person." Compl. at ¶¶ 50, 108. While the removal of territories may rise to the level of an adverse employment action, Plaintiff has failed to alleged sufficient factual allegations to show that his employment condition was materially altered. See Ivan, 595 F. Supp. 2d at 471. For instance, Plaintiff does not allege the total amount of territories that he serviced prior to the change, so the Court is unable to determine what impact the removal had on his employment. In addition, Plaintiff does not allege that the removal of two territories negatively affected his compensation or that he was deprived of employment opportunities. Furthermore, Plaintiff alleges that he was "excluded from meetings and communications regarding a facility called Buttonwood, which he was instrumental in bringing to Vericare." Compl. at ¶¶ 50, 108. However, Plaintiff has not alleged that Defendant's decision to prevent Plaintiff from attending those meetings was based on age. Therefore, this allegation does not suffice as an adverse employment action in an age discrimination case.

Accordingly, Plaintiff's LAD claim for age discrimination is dismissed without prejudice because Plaintiff fails to allege sufficient facts to show that he was a member of the protected class,

---

[3] In his Complaint, Plaintiff alleges that, "on or around June 15, 2013, in further retaliation for Dr. Rossi's complaints regarding discrimination by upper management at Vericare and the company's violations of Medicare and Medicaid, Vericare terminated Dr. Rossi's employment." Compl. at ¶¶ 54, 126. While Plaintiff asserts that he was terminated because he complained about some unspecified "discrimination," Plaintiff does not specifically allege that he was terminated because he complained to members of management at Vericare about experiencing age discrimination. More importantly, nor does Plaintiff allege that he was terminated because of his age. Without additional allegations, this Court cannot infer that Defendant's decision to terminate Plaintiff was motivated by discriminatory animus based on age. Tellingly, in his briefing, Plaintiff does not argue that his termination was an adverse employment action in the context of his age discrimination claim. As such, I will not consider Plaintiff's termination as an adverse employment action in connection with his LAD claim for age discrimination.

13

that he suffered an adverse employment action or that he was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination. See Zive, 182 N.J. at 450.

### (iii) LAD – Hostile Work Environment

Defendant argues that Plaintiff fails to state a claim for hostile work environment because Plaintiff does not include any allegations to suggest that the conditions of his employment had been altered based on his age. Defendant further argues that Plaintiff fails to allege that he was subjected to offensive or pervasive conduct. Rather, Defendant maintains that Plaintiff's allegations amount to nothing more than generalized, workplace conduct that is far from the offensive conduct required to establish a hostile work environment claim. Once again, I agree.

To establish a claim for hostile work environment, a plaintiff must show that that the complained of conduct: (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive. Lehmann, 132 N.J. at 603-604; see Cutler v. Don, 196 N.J. 419, 431 (2008) ("Making that assessment requires an examination of the totality of the circumstances."). To sustain an action, the complained of conduct need not be both "severe and pervasive," since such a dual requirement "would bar actions based on a single, extremely severe incident or, perhaps, even those based on multiple but randomly-occurring incidents of harassment." Lehmann, 132 N.J. at 606. Nevertheless, "severe or pervasive conduct must be conduct that would make a reasonable [person] believe that the conditions of employment are altered and [that the] working environment is hostile." Cutler, 196 N.J. at 431 (internal quotation marks and citation omitted). On one hand, severe or pervasive conduct can be shown by alleging "numerous incidents that, if considered individually, would be insufficiently severe to state a claim, but considered together are

14

sufficiently pervasive to make the work environment intimidating or hostile." Lehmann, 132 N.J. at 607. On the other hand, severe or pervasive conduct may also be shown "by a single, severe incident of harassment rather than by multiple incidents of harassment." Id.

In the instant matter, the vast majority of Plaintiff's complained of conduct has no relation to his alleged protected status of age. For example, Plaintiff contends that Myll and other members of the upper management at Vericare minimized Plaintiff's involvement in the company, and that Defendant put pressure on Plaintiff to engage in what he believed was fraudulent conduct. However, Plaintiff has provided no link between the complained of conduct and his age – which is currently unknown – let alone shown that his complained of conduct would not have occurred but for his age. See Lehmann, 132 N.J. at 603-604. To the contrary, as alleged, Plaintiff's complained of conduct would not have occurred but for his complaints to members of upper management and Dr. Cooper about Vericare's alleged practice of committing fraud against Medicare and Medicaid. What Plaintiff is left with is a single incident of alleged harassment that could plausibly be construed as related to his age, i.e. that Defendant removed two territories from Plaintiff and placed them under the supervision of a younger person. In the context of a hostile work environment claim, that allegation alone is not an "extremely severe incident" of harassment, particularly since Plaintiff has failed to allege how such a change in his responsibilities impacted his employment. See Lehmann, 132 N.J. at 607. Nor is it sufficient to show that Plaintiff's workplace was permeated with discriminatory intimidation, since it was a single incident. See Cortes v. Univ. of Med. & Dentistry, 391 F. Supp. 2d 298, 308 (D.N.J. 2005) ("A hostile work environment exists when a workplace is permeated with discriminatory intimidation, ridicule and insult so severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment."). Without additional allegations, Plaintiff's claim for hostile work environment under the LAD must fail.

Accordingly, Plaintiff's LAD claim for hostile work environment is dismissed without prejudice because Plaintiff has failed to allege that his complained of conduct would not have occurred but for his age, or that his complained of conduct was severe or pervasive enough to alter the conditions of his employment. See Lehmann, 132 N.J. at 603-604.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the LAD claims (Counts Five and Six) of the Complaint is granted, and Plaintiff's LAD claims for age discrimination and hostile work environment are dismissed without prejudice. Furthermore, in his Complaint, Plaintiff alleges that this Court has federal question jurisdiction over the instant action, because of his claims under the FCA. However, all federal and state FCA claims have been dismissed, pursuant to a settlement, prior to the filing of the instant motion. As a result, federal question jurisdiction no longer exists, and Plaintiff does not base his suit on diversity jurisdiction in his Complaint. Indeed, the Court questions whether diversity jurisdiction exists. See Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002) ("A district court has subject matter jurisdiction over state law claims if there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 for each plaintiff."). Should the Court lack diversity jurisdiction, the Court is inclined not to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3). In that regard, the Court directs Plaintiff to submit a declaration, within ten (10) from the date of the Order accompanying this Opinion, setting forth whether he asserts diversity jurisdiction and the facts supporting that assertion.

DATE: November 22, 2016

                                                                     /s/ Freda L. Wolfson  
                                                                     Freda L. Wolfson  
                                                                     United States District Judge